## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | **CIVIL ACTION** |
| **DHINGRA,** | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 22-0765** |
| | : | |
| **SAP AMERICA, INC.,** | : | |
| *Defendant.* | : | |

## MEMORANDUM

**KENNEY, J.**                                                    **FEBRUARY 27, 2023**

### I.     INTRODUCTION

*Pro se* Plaintiff Anuradha Dhingra ("Plaintiff") brings five claims against Defendant SAP

America, Inc. ("Defendant") asserting: (i) a violation of the Fifth Amendment; (ii) breach of

implied covenant of good faith and fair dealing; (iii) invasion of privacy; (iv) a violation of the

Alien Tort Statute; and (v) that temporary and permanent injunctive relief is warranted. ECF No.

1 at 6–13. Before the Court is Defendant's fully briefed Motion for Summary Judgment. ECF Nos.

35, 41, 43, 44. For the reasons set forth below, the Court will grant Defendant's Motion and dismiss

this case. An appropriate order will follow.

### II.     BACKGROUND

Plaintiff is a management and technology consultant who previously used Defendant's

services to obtain professional certifications through the SAP Certification Hub ("Certification

Hub"). ECF No. 1 at 2. Specifically, in 2015 and 2016, following the completion of SAP Training

Academies, Plaintiff sat for online proctored examinations[1] and received two certifications in distinct, but unspecified, software technologies. ECF No. 9 at 2; ECF 20 at 3:9-11. Once certified, Plaintiff received an SAP Certification and Certification ID. ECF No. 1 at 4. She was also granted access to SAP's Certification Hub which keeps a record of certifications and alerts users of expired certifications or requirements for maintaining a current certification. ECF 9 at 1–2. Importantly, the SAP certifications allowed Plaintiff to represent to employers that she was certified to operate certain software. ECF 20 at 2:14-20. SAP also maintains a Learning Hub which helps users build and maintain SAP software skills and provides them with the training required to obtain and maintain SAP certifications. ECF No. 9 at 2. Relatedly, SAP requires that those with certifications complete regular assessments in order to maintain current certifications. *Id.* at 1. Plaintiff's subscriptions to the Certification Hub and Learning Hub lapsed in 2016 and, accordingly, her certifications expired in 2016. *Id.* Though her previous certifications expired, Plaintiff was not immediately foreclosed from subscribing and accessing either Hub to become re-certified. *Id.*

In November 2021, Plaintiff received an email from Defendant informing Plaintiff that her Certification ID, which allowed her to access certifications and trainings, would expire within 30 days. ECF No. 1 at 5. In December 2021, Plaintiff paid for a Certification Hub subscription and intended to renew her certifications but ultimately did not do so within the 30-day deadline because of financial hardship. ECF No. 1 at 5; ECF 20 ¶¶ 5:10–17. Instead, from November 2021 to December 15, 2021, Plaintiff made repeated requests via phone, email, and Defendant's online dialogue box to extend her Certification ID. ECF No. 1 at 5. Nevertheless, around December 15, 2021, SAP changed Plaintiff's Certification ID to "expired," and Plaintiff was no longer able to access her Certification Hub subscription. *Id.* at 5–6. Without such access, Plaintiff is unable to

---

[1] At the time of the examinations, Plaintiff verified her identification by showing the proctor her government issued ID and her room through the webcam. ECF No. 1 at 4.

obtain official records of her 2015 and 2016 certifications.[2] *Id.* Additionally, Plaintiff is unable to access a prior "On-Premise technology" SAP certification[3] ("Older Certification") that she attained at some time "many years ago."[4] ECF 20 at 3:11-16. While Plaintiff has documentation of her certifications, she has been unable to access the official certification documents ever since her Hub access was withdrawn.[5] *Id.* at 4:6-12.

The lapsed certifications, and records thereof, are important to Plaintiff because she would like to list them on her resume to establish competency and seniority in her field. ECF 20 at 3:18-20; 5:18-22. Plaintiff does not dispute that, at present, her 2015 and 2016 certifications are "obsolete" or "old." *Id.* at 7:20-21. However, Plaintiff maintains that she needs the official certifications to prove that she was certified at some point. *Id.* at 7:20-24. According to Plaintiff, prospective employers frequently request verification of certifications vis-à-vis the official certificates, which she does not have in her possession.[6] *Id.* at 4:1-5. Because Plaintiff is unemployed, and has struggled to find employment in her field, she avers that the absence of the certifications has detrimentally impacted her career. *Id.*

## III.   PROCEDURAL HISTORY

On March 1, 2022, Plaintiff filed a Complaint and request for injunctive relief against SAP alleging that Defendants: violated her Fifth Amendment rights by denying Plaintiff access to the Certification Hub (Count I), breached the implied covenant of good faith and fair dealing (Count

---

[2]       Defendant maintains that they did not delete records of Plaintiff's SAP certification credentials. ECF 9 at 5.
[3]       According to Plaintiff, the Older Certification covers different technology skills from Plaintiff's 2015 and 2016 certifications. ECF 20 at 3:9-17.
[4]       The Older Certification was not obtained in an online format and, accordingly, Defendant informed Plaintiff that verification of the Older Certification would be more difficult and would require conferring with SAP's parent company, which is headquartered in Germany. ECF 20 at 3:20-25.
[5]       Defendant was able to locate records of the 2015 and 2016 certifications but did not give Plaintiff the records located. ECF 20 at 3:22-23; 7:1-13.
[6]       According to Plaintiff, prospective employers have gone so far as to accuse Plaintiff of lying about her certifications when she does not provide proof. *Id.* at 7:15-16.

II), executed an invasion of privacy because of their online certification's proctoring process (Count III), violated the Alien Tort Statute because SAP may delete Plaintiff's certification records (Count IV), and owe Plaintiff injunctive relief in abstaining from deleting her SAP certification records lest she suffer irreparable harm (Count V). ECF Nos. 1, 2.

Following proper service of Defendants, and in the absence of a timely response to Plaintiff's Complaint, the Court ordered Defendant to file a responsive pleading on or before April 29, 2022. ECF No. 8. Defendant filed an Answer on April 28, 2022 in which Defendant provided that Plaintiff failed to complete any regular assessments to keep her certifications current, failed to maintain subscriptions to the Hubs, and that Defendant would make a customer service representative available to Plaintiff if she would like to enroll in up-to-date certification programs. ECF No. 9.

The Court held a pretrial conference on June 21, 2022. ECF No. 20. At the hearing, Defendant offered to provide Plaintiff with an affidavit attesting that she was previously certified after Plaintiff provided Defendant with records related to her certifications. *Id.* at 7:1-12. Plaintiff approved of this arrangement by stating, "that would be good" and confirming that "the fact that I did certify is what I'm trying to achieve here." *Id.* at 7:11-24. The Court reiterated that this arrangement would achieve the Plaintiff's goal, to which Plaintiff agreed. *Id.* at 8:1-2. The parties agreed to a timeline for providing the necessary information, and the Court ordered Defendant to notify the Court within two weeks of providing the affidavit to the Plaintiff, and the Defendant agreed. *Id.* at 8:6-13. The Court asked whether Plaintiff sought any further relief to which she replied, "that's all I need." *Id.* at 9:1-4. Importantly, Plaintiff confirmed that the agreed upon arrangement would resolve the case. *Id.* at 9:5-10.

That same day, the Court ordered Plaintiff to provide documentation of the certifications and Defendant to produce an affidavit attesting to the existence of prior certifications as documented by Plaintiff. ECF No. 16. The Court's Order further contemplated that Defendant's affidavit would resolve all issues in this case and that the parties would file a joint stipulation of dismissal by July 12, 2022. *Id.* Plaintiff timely provided Defendant with the records required to verify her certification. ECF No. 19. Specifically, Plaintiff provided Defendant records of her 2015 and 2016 SuccessFactors certifications and an Application Consultant certification from October, which seems to be the alluded Older Certification.[7] ECF No. 24 at 4–5. However, as to the October Certification, Plaintiff redacted the year of certification from the documents provided to Defendant. *Id.* at 5. Defendants requested an unopposed extension of time to submit the affidavit, which the Court granted. ECF Nos. 19, 22.

On July 12, 2022, SAP provided Plaintiff with the affidavit in compliance with the Court's Orders.[8] ECF No. 24 at 4. Defendant did not include the Older Certification because the certification year was redacted by Plaintiff and because the certification was older than 10 years.[9] *Id.* at 5. With the affidavit, Defendant provided Plaintiff with a joint stipulation of dismissal, but Plaintiff refused, the next day, to sign the stipulation because Defendant did not verify, through the affidavit, that Plaintiff had obtained the October Certification and the fact Plaintiff had attended SAP Academy. *Id.* at 5–6.

---

[7]     Plaintiff provided Defendant additional documents ("Course Participation certificates, Knowledge and Record of Achievements, and screenshots of Plaintiff's account from Open.SAP.com") to be included in the affidavit that were not raised in the Plaintiff's Complaint nor at the Pre-Trial hearing. ECF No. 24 at 4–5.

[8]     The affidavit attested to Plaintiff's 2015 and 2016 certifications. The Defendant also included some extraneous documents in the affidavit that were provided by the Plaintiff, which were beyond the Court Order's scope. ECF No. 24 at 5.

[9]     SAP believes the Older Certification is older than 10 years because SAP was unable to locate record of it, and SAP does not maintain certification records more than 10 years old. ECF No. 24 at 5.

On July 15, 2022, Plaintiff sent a letter to the Court seeking reconsideration of the prior orders directing the parties to submit a stipulation of dismissal after Defendant's affidavit was filed. ECF No. 22. The Court denied Plaintiff's request and, because Plaintiff no longer agreed to dismissal, issued a standard scheduling order and referred the case to the Honorable Magistrate Judge Sitarski for a settlement conference. ECF Nos. 22, 23.

Defendant filed a Motion to Enforce Resolution of the Court's Order on July 25, 2022. ECF No. 24. Defendant stated that they fully complied with the Court's Order and that Plaintiff was seeking to reverse course to "extract more time and resources from SAP." *Id.* at 8. Defendant requested the Court enter an order either (i) requiring Plaintiff, within five business days of a Court's order, to execute the joint stipulation to dismiss and return the executed copy to Defendant; or (ii) dismiss Plaintiff's Complaint against Defendant with prejudice. *Id.* Plaintiff requested an extension of time to respond, which the Court denied, and Defendants filed a supplemental brief. ECF Nos. 27–29. The Court denied Defendant's Motion to Enforce Resolution on August 25, 2022. ECF No. 33.

On October 24, 2022, Judge Sitarski scheduled a settlement conference for November 29, 2022. ECF No. 34. In the interim, Defendant filed the instant Motion for Summary Judgment on November 9, 2022. ECF No. 35. On November 18, 2022, Plaintiff filed a motion in which she sought to reschedule the settlement conference and to proceed in-person rather than via video conference due to WiFi connection issues. ECF No. 36. The Court denied Plaintiff's request to reschedule, and Judge Sitarski permitted the conference to proceed by phone rather than via video call. ECF Nos. 37, 38. The parties were unable to reach a settlement at the November 29, 2022 conference and the Court extended Plaintiff's deadline to respond to the instant motion to December 16, 2022. ECF No. 40. On December 21, 2022, Plaintiff filed an objection to the Motion

in which she primarily argued that Summary Judgment should be denied because Defendant's Motion did not adhere to certain policies and procedures required by this Court. ECF No. 41. The Court directed Plaintiff to file a substantive response describing the material facts at issue. ECF No. 42. On December 30, 2022, Plaintiff filed the requested Response and Defendant replied on January 6, 2023. ECF Nos. 43, 44. Defendant's Motion for Summary Judgment is now fully briefed and ripe for consideration.

## IV.     STANDARD OF REVIEW

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Indeed, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine

issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252 (1986). The non-movant opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

When determining the existence of a genuine issues of material fact, the court must "examine the evidence of record in the light most favorable to the party opposing summary judgment and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted). This standard applies with equal force to a *pro se* plaintiff. *Erickson v. Parduc*, 551 U.S 89, 94 (2007).

## V.    DISCUSSION

Plaintiff alleges Defendant is liable for: (i) violating her Fifth Amendment rights; (ii) breaching the implied covenant of good faith and fair dealing; (iii) executing a false light invasion of privacy against Plaintiff; and (iv) violating the Alien Tort Statute. ECF No. 1 at 6–13. Plaintiff additionally seeks injunctive relief to avoid suffering irreparable harm. *Id.* The Court deems judgment in Defendant's favor appropriate on as to all claims.

### a.   Plaintiff's Fifth Amendment Claim

The Fifth Amendment protects individuals against interference with certain rights and liberty interests by the federal government; purely private actions do not trigger constitutional protection. *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 (1987); *see Citizens for Health v. Leavitt*, 428 F.3d 167, 178 (3d Cir. 2005) ("[I]t is well established that the substantive component of due process, embodied in [the Fifth Amendment], provides heightened protection against *government interference* with certain fundamental rights and liberty interests." (internal quotation marks omitted) (emphasis in the original)); *see also Fallbrook Irrigation Dist. v. Bradley*, 164 U.S. 112, 158 (1896) ("The [F]ifth [A]mendment . . . applies only to the federal government, as has many times been decided."). "With a few exceptions, . . . constitutional guarantees of individual liberty and equal protection do not apply to the actions of private entities." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991).

Plaintiff asserts that Defendant is a government actor because of Defendant's collaborations with the federal government. ECF No. 43 at 15. As evidence, Plaintiff provided screenshots of Defendant's websites that publicize the Defendant's collaboration with several U.S. federal agencies and a poster publicizing the Defendant's forum on federal agencies. ECF 43 at 9; ECF 43 at 42–46. However, this assertion is insufficient for the Defendant, a private actor, to be

considered a government actor. *Williams v. Discovery Day Sch.*, 924 F.Supp. 41, 44 (E.D. Pa. 1996) (courts look to whether there is a "symbiotic relationship" between the government and the private entity; a private actor "is not considered a government actor simply because 100% of its work is done on contract to [the] government" or even if it "receives almost all its funding from the government," even when the private entity "provides a valuable or essential service to the government."). Rather, the standard to convert a private actor into a government actor requires a showing that the government "encourage[d] or coerce[d] a private party to act in a manner that deprive[d] a plaintiff of a constitutional right." *Id*. Therefore, Plaintiff's briefs and the evidence relied upon therein firmly support a finding that Defendant does not meet the *Williams* standard. Indeed, Defendant has demonstrated that they are not—and never have been—a government actor. ECF No. 35 at 8.

Even if Defendant was a government actor, Plaintiff fails to describe any constitutionally protected liberty interest of which she was deprived. ECF No. 43 at 15–16; *see Kerry v. Din*, 576 U.S. 86, 93 (2015) (" . . . [B]efore conferring constitutional status upon a previously unrecognized 'liberty,' we have required 'a careful description of the asserted fundamental liberty interest,' as well as a demonstration that the interest is 'objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed.'"). "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013). Plaintiff makes no such allegation here and the evidence does not support such a finding.

Plaintiff also fails to describe a deprivation of property interests that would sustain a Fifth Amendment claim. ECF No. 1 at 6–7; ECF No. 43 at 15–16; *see Theodorou v*. Measel, 53 F. App'x

640, 642 (3d Cir. 2002) ("[T]he Fifth Amendment forbids at least two distinct assaults on private property rights: deprivations of property without due process, and takings of property without just compensation. A taking, in turn, may be either for public use, which is forbidden unless just compensation is paid, or for private use, which is unlawful regardless of the compensation paid."); *see also R & J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery*, 670 F.3d 420, 432 (3d Cir. 2011) ("[U]ntil just compensation has been denied, an owner has not suffered a constitutional injury and does not have a federal takings claim."). Again, Plaintiff's claims fall far short.

Plaintiff asserts, without citation, that the Fifth Amendment applies because Defendant may delete her certification records. ECF No. 1 at 6–7. Put simply, certification record perseveration is not a fundamental liberty interest deeply rooted in this Nation's history and tradition. Furthermore, Plaintiff has not been denied of her property interests without due process and without just compensation especially when considering the Defendant's affidavit and assertion that they would not delete Plaintiff's records. ECF No. 24 at 5; ECF No. 35 at 10–11. Even if Defendant does proceed in deleting the Plaintiff's certification records, such conduct cannot be reasonably construed to be protected liberty and property interests under the Fifth Amendment. *See Hunter v. S.E.C.*, 879 F. Supp. 494, 497 (E.D. Pa. 1995) ("Unless accompanied by an alteration in legal status or extinction of some legally protected right, the infliction of damage to one's personal or professional reputation does not infringe a liberty or property interest"). Count I against Defendant must be dismissed.

**b.  Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim**

For a plaintiff to plead a cause of action for breach of the covenant of good faith[10] under Pennsylvania law[11], the plaintiff must plead the elements of a contract breach. *Sheinman Provisions, Inc. v. Nat'l Deli, LLC,* No. CIV. A. 08-CV-453, 2008 WL 2758029, at *3 (E.D. Pa. July 15, 2008) ("[A] plaintiff must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract other than the covenant of good faith and fair dealing, and that resultant damages were incurred by plaintiff."). "Notably, a claim for breach of a covenant of good faith and fair dealing may not be maintained as an independent cause of action separate from the breach of contract claim." *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.,* 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009). The elements that Plaintiff must meet for a breach of contract claim are (i) the existence of a contract; (ii) breach of the contract; and (iii) resultant damages. *DelphX Corp. v. Fondren,* 600 F. Supp. 3d 540, 547 (E.D. Pa. 2022).

Plaintiff, in her Response, asserts that her Certification & Learning Hub subscriptions are her contracts with the Defendant, but at the summary judgment stage, such a baseless claim does not prove that any such contract indeed existed. ECF No. 43 at 19. Nowhere in the exhibits Plaintiff relies upon to defeat the instant Motion does a contract between the parties appear—the 10

---

[10]    This applies regardless of whether the breach concerns an express or implied covenant. *Sheinman Provisions, Inc. v. Nat'l Deli, LLC,* No. CIV. A. 08-CV-453, 2008 WL 2758029, at *3 (E.D. Pa. 2008).

[11]    In the Complaint, Plaintiff did not explicitly invoke any particular jurisdiction's covenant of good faith law. ECF No. 1 at 7–8. Instead, Plaintiff only references the Switzerland Constitution for this claim instead of any relevant state or federal law. ECF No. 1 at 7. The Plaintiff later invokes Pennsylvania Law in her Response. ECF No. 43 at 19. The Court presumes that *pro se* Plaintiff intended to apply Pennsylvania's breach of contract claim law.

exhibits[12] she relies on for this claim merely prove that she had paid for her past examinations and subscriptions. ECF No. 43 at 17–19. Plaintiff argued that her inability to sign into the Certification and Learning Hub constitute contract breaches, but the evidence presented by Plaintiff does not establish that Defendant had an affirmative duty, by way of a contract, to allow Plaintiff sign into the Hubs after her certifications had lapsed. By extension, then, there is no genuine dispute as to whether Defendant breached this non-existent contract. *Id.* Finally, Plaintiff also fails to establish a genuine issue as to whether any damages were incurred from Defendant's alleged breach. ECF No. 43-1.

There is no evidence there was a contract to this effect, there is no evidence Defendant breached such a contract, and there is no evidence to support damages; Plaintiff has failed to provide any evidence from which a jury could reasonably conclude that Defendant was in breach of a contract with Plaintiff. In the absence of any evidence to support a breach of contract, upon which her breach of implied covenant of good faith and fair dealing claim might rest, summary judgment must be granted. *See Harvey v. City of Philadelphia*, 253 F. Supp. 2d 827, 831 (E.D. Pa. 2003) ("Without any specific supportive facts in the record, the plaintiff's bald assertions alone cannot overcome the defendants' motion for summary judgment."); *see also Celotex Corp.,* 477 U.S. at 324 (1986) (finding that the nonmoving party in a summary judgment motion must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions, on file,' designate 'specific facts showing that there is a genuine issue for trial.'"). Accordingly, Count II must be dismissed.

---

[12]     Plaintiff highlights ten screenshots (Exhibit C, Exhibit D, Exhibit N, Exhibit O, Exhibit P, Exhibit Q, Exhibit R, Exhibit S, Exhibit T, and Exhibit T1) to support her breach of the covenant of good faith claim. ECF No. 43-1.

### c.  Plaintiff's False Light Invasion of Privacy Claim

To establish a false light invasion of privacy claim under Pennsylvania law[13], a plaintiff

must show: (i) "defendants gave publicity to a matter concerning the plaintiffs that placed the

plaintiffs before the public in a false light"; (ii) a reasonable person would be offended by the false

---

[13]     In the Complaint, Plaintiff did not explicitly invoke any jurisdiction's false light invasion of privacy law. Unlike for Count II, Plaintiff did not later specify Pennsylvania law in her Response. ECF No. 43 at 20–21. The court understands that the Plaintiff intended to apply Pennsylvania's false light invasion of privacy law. ECF No. 1 at 8–9.

    Additionally, Plaintiff seems to assert a general invasion of privacy claim because she believes she is at risk of identity theft due to the Defendant's online proctoring process. ECF No. 1 at 10. Under Pennsylvania law, there are only four distinct invasion of privacy torts: "(1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to one's private life, and (4) publicity placing one in a false light." *Frankel v. Warwick Hotel*, 881 F. Supp. 183, 187 (E.D. Pa. 1995). A general invasion of privacy claim does not exist. *Id.*  In her Complaint, Plaintiff rests her general invasion of privacy claim on the idea that "someone else" with a similar name might access and make use of her certification records and SAP credentials to their benefit. *Id.* at 8–9. The Court infers this to be a claim for the appropriation of Plaintiff's name or likeness. Additionally, in the Response to the instant Motion, Plaintiff appears to allege an invasion of privacy claim based on SAP's online proctoring process which required her to show her ID, her home address, and her room to the proctor. ECF No. 43 at 20–21. The Court understands this to be an intrusion upon seclusion claim. Because Plaintiff is *pro se*, the Court will briefly discuss both assertions.

    First, Plaintiff's claim sounding in appropriation of name or likeness fails. Not only is Plaintiff's allegation that some unspecified person with a similar name might make use of her certifications to their own benefit (when, in fact, Plaintiff cannot make use of such certifications herself because they are inaccessible or outdated) entirely speculative, but she has not established that use of her certification is equivalent to the use of her name or likeness. *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F.Supp.2d 677, 698 (W.D.Pa.2008) (holding that "[t]he plain meaning of 'likeness' is 'appearance or semblance'").

    Second, even if properly pled, an intrusion upon seclusion invasion of privacy claim will fail here because it requires Defendant to "intentionally intrude[], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Borse v. Piece Goods Shop, Inc.,* 963 F.2d 611, 620 (3d Cir. 1992). The Pennsylvania Supreme Court has held that "a basic element of this form of the tort [of intrusion upon seclusion] is the intentional overhearing *by one not intended to be a party to the communication* of the contents of a private conversation" and that "[i]n the absence of an overhearing of a private communication, this tort has not been committed." *Marks v. Bell Telephone Co.*, 460 Pa. 73, (1975) (emphasis added). Though this tort has been expanded to contexts other than conversations, the key question is whether the alleged intruder was intended to be part of the communication. Here, to the extent that Plaintiff's claim rests on the online proctoring process, it is without doubt that Defendant, as the proctor of the exam, was intended to be privy to the online exam. Even though Plaintiff may have felt uncomfortable with the online proctoring process, Plaintiff does not dispute that she was unaware of the online proctoring process, and Plaintiff's exhibits prove she intentionally and consensually participated in multiple examinations—examinations that each required an online proctor. ECF No. 43 at 17–19. Accordingly, Defendants cannot be said to have "intentionally intruded" in any way.

publicity; and (iii) the defendants "knew of or acted in reckless disregard to the falsity of the publicized matter." *Casselli v. City of Philadelphia,* 54 F. Supp. 3d 368, 380 (E.D. Pa. 2014).

Plaintiff's false light invasion of privacy claim must fail because none of the elements are supported by the record. First, Plaintiff fails to establish that Defendant "gave publicity" to any information regarding her certification status. "Publicity" requires that the "matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* Plaintiff does not allege that Defendant made any affirmative statements about her, and certainly does not allege that any such statements were communicated to the public at large. At most, Plaintiff alleges that Defendant *may* delete[14] records of her certifications and then *may*[15] publicly report the absence of such certification records. ECF No. 35 at 10–11. Such an allegation, especially when it is wholly unsupported by any evidence, is insufficient to satisfy the first element at this stage.

Second, even if Defendant had given publicity to information about Plaintiff's certification status, Plaintiff has not proven that such statements are false or misleading. *Doe v. Wyoming Valley Health Care System, Inc.*, 987 A.2d 758, 766 (Pa. Sup. 2009) ("it is essential that the matter published concerning the plaintiff is false"). At most, Plaintiff alleges that Defendant's deletion of certification records will present a false and misleading[16] professional image of her. ECF No. 1 at 9. To the extent Plaintiff's claim rests on an allegation that by deleting expired records of certifications Defendant will convey that Plaintiff is not presently certified, this would not be false and therefore cannot support Plaintiff's claim. *Doe*, 987 A.2d at 766. Indeed, by her own

---

[14]    Deleting records is, in fact, the opposite of a form of publicity.
[15]    Plaintiff's claim is entirely prospective; there is no indication that Defendant has—or will—publicize any of Plaintiff's SAP difficulties, delete her past certifications, or inform the public at large that her records have been deleted. ECF No. 35 at 10–11; ECF No. 43 at 9–10.
[16]    In the Complaint, Plaintiff does not specify in what way she would be falsely portrayed by the Defendant if the certification records were deleted. ECF No. 1 at 9. Plaintiff does not expand on this claim in her Response. ECF No. 43.

admission, Plaintiff is not presently certified. ECF No. 20 ¶¶ 6:10-11. Additionally, to the extent

Plaintiff alleges that by deleting expired records SAP might create an inference that she was *never*

certified, the Court declines to follow such speculative logic. [17] Moreover, Defendant's Affidavit

submitted as a result of the June 2022 hearing directly rebuts any confusion that Plaintiff was, at

some time, certified by SAP. ECF No. 24 at 5.

Finally, in the absence of factual support for the first two elements, the Court cannot

conclude that Defendant has taken any action that rises to the level of "a major misrepresentation

of a person's character, history, activities or beliefs that could reasonably be expected to cause a

reasonable person to take serious offense." *Doe*, 987 A.2d at 765. Accordingly, because there are

no genuine disputes as to any of the elements of Plaintiff's false light invasion of privacy claim,

Count III must be dismissed.

### d.  Plaintiff's Alien Tort Statute Claim

There is no cause of action necessary to invoke the Alien Tort Statute. *BenHaim v. Neeman*,

543 Fed. Appx. 152 (3d Cir. Nov. 4, 2013). The Alien Tort Statute permits federal courts to hear

civil torts brought by foreign nationals on the basis of a violation of a "specific, universal, and

obligatory norm of international law" or a U.S. treaty violation. *BenHaim*, 543 Fed. Appx. at 152;

*see also Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1022 (9th Cir. 2014) (finding that prohibition

of slavery is a universal norm of international law); *see also Sarei v. Rio Tinto, PLC*, 671 F.3d 736,

758 (9th Cir. 2011) (concluding that the prohibition against genocide is a "specific, universal, and

obligatory internationally accepted norm" since World War II); *see also Abdullahi v. Pfizer, Inc.*,

562 F.3d 163, 187 (2d Cir. 2009) (finding that nonconsensual medical experimentation of humans

---

[17]      Plaintiff's claim is entirely prospective and therefore unsupported because there is no explicit indication
Defendant has—or will—publicize any of Plaintiff's SAP difficulties, delete her past certifications, or that such
purported deletion would create a false or misleading image of Plaintiff. ECF No. 35 at 10–11; ECF No. 43 at 9–10.

falls within the Alien Tort Statute's jurisdiction); *but see Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1253 (11th Cir. 2005) (finding that Guatemalan unionists' claim that they were shoved and had their hair pulled by armed security officials during eight hours of detention was insufficient to allege torture under the Alien Tort Statute). Courts cannot adjudicate claims for "'violations of any international law norm with less definite content and acceptance among civilized nations' than those offenses historically recognized." *M.C. v. Bianchi*, 782 F. Supp. 2d 127, 130 (E.D. Pa. 2011); *see Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 758 (9th Cir. 2011) (concluding that the prohibition against genocide has been an appropriate "specific, universal, and obligatory internationally accepted norm" since World War II); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 738 (2004) (holding that an illegal detention of a human for less than one day violated no norm of international law to support an Alien Tort Statute claim).

Plaintiff argues that she has a viable Alien Tort Statute claim since, "[s]afe conduct and a person's right to work are specific, universally accepted rights encompassed in International Human Rights treaties signed and ratified by the U.S." ECF No. 43 at 21–22. Further, Plaintiff maintains that she has a claim under the Alien Tort Statute merely because the Defendant may delete[18] the historical records of her certifications. ECF No. 1 at 9–11. To state plainly, Plaintiff's claim does not fall under the "very limited category" of claims under the Alien Tort Statute that Federal Courts may preside over. *Alvarez-Machain*, 542 U.S. 692 at 712. Even if Defendant deletes the Plaintiff's certification records, this conduct does not rise to a level comparable to slavery, genocide, or nonconsensual medical experimentation to sustain a successful Alien Tort Statute claim. *Doe I*, 766 F.3d at 1022; *Sarei, PLC*, 671 F.3d at 758; *Abdullahi*, 562 F.3d at 187. Similar to Plaintiff's Count III assertions, Plaintiff's claims under the Alien Tort Statute are prospective

---

[18]     To reiterate, Defendant has asserted they will not delete her past certifications. ECF No. 35 at 10–11.

and wholly unsupported. ECF No. 1 at 9–11. Accordingly, as a matter of law, Count IV must be dismissed.

### e.  Plaintiff's Request for Injunctive Relief

To maintain a claim for injunctive relief, a plaintiff must establish (i) a likelihood of the success on the merits; (ii) irreparable harm without injunctive relief; (iii) that an applied injunction would not result in greater harm to the nonmoving party; and (iv) the public interest favors injunctive relief. *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006). The threshold element requires that "the chance of success on the merits be better than negligible[,]" and "more than a mere 'possibility' of relief is required." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Here, there is no question as to whether Plaintiff will have difficulty showing the elements of her claim; indeed, she has entirely failed to do so. As described above, Plaintiff's claims are rooted in implausible legal theories and are wholly unsupported by the record, thereby warranting summary judgment in Defendant's favor. *See Lewis v. City of Philadelphia Police, L. Enf't*, No. 23-CV-0080, 2023 WL 376009, at *2 (E.D. Pa. Jan. 23, 2023) (denying injunctive relief when all substantive claims were dismissed); *see also Dunn v. Lehigh Valley Center For Sight, P.C.*, No. 03-cv-190, 2003 WL 222299275, *4 (E.D. Pa. Sept. 30, 2003) (same). Because none of Plaintiff's substantive claims are viable, her request for injunctive relief must also be dismissed.

## VI.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 35) will be granted.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, JUDGE**